Suzanne P. v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist. (2019 NY Slip Op 06343)





Suzanne P. v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist.


2019 NY Slip Op 06343


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, CARNI, LINDLEY, AND CURRAN, JJ.


723 CA 18-01647

[*1]SUZANNE P., ADMINISTRATRIX OF THE ESTATE OF MITCHELL P., DECEASED, PLAINTIFF-RESPONDENT,
v
JOINT BOARD OF DIRECTORS OF ERIE-WYOMING COUNTY SOIL CONSERVATION DISTRICT, ALSO KNOWN AS ERIE-WYOMING JOINT WATERSHED BOARD, DEFENDANT-APPELLANT, ET AL., DEFENDANTS. (APPEAL NO. 1.) 






WALSH, ROBERTS & GRACE, BUFFALO (MARK P. DELLA POSTA OF COUNSEL), FOR DEFENDANT-APPELLANT. 
PAUL WILLIAM BELTZ, P.C., BUFFALO (WILLIAM A. QUINLAN OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Erie County (Mark J. Grisanti, A.J.), entered March 29, 2018. The order denied the motion of defendant Joint Board of Directors of Erie-Wyoming County Soil Conservation District for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff commenced this action against defendants Joint Board of Directors of Erie-Wyoming County Soil Conservation District, also known as Erie-Wyoming Joint Watershed Board (Board), Erie County Soil & Water Conservation District (ECSWCD), Wyoming County Soil & Water Conservation District (WCSWCD), Town of West Seneca (Town), and County of Erie (County) seeking damages for the death of her son (decedent). Decedent initially entered Buffalo Creek, at a location in the Town, with several friends to clean off after getting muddy while engaged in recreation along nearby trails. As the group waded and swam in the creek, decedent went over a waterfall created by a low head dam, was submerged, and sustained drowning injuries that ultimately proved fatal. The subject dam, part of a project to control creek flow and flooding, was one of several designed and constructed in the 1950s by a federal agency now known as the Natural Resources Conservation Service (NRCS) and subsequently operated and maintained by the Board pursuant to certain contracts with the NRCS, including the governing operation and maintenance agreement (agreement).
The Board appeals in appeal No. 1 from an order denying its motion for summary judgment dismissing the complaint against it. In appeal Nos. 2, 3, and 4, plaintiff appeals from orders granting the respective motions of ECSWCD, WCSWCD, and the Town for summary judgment dismissing the complaint against them. In appeal No. 5, plaintiff appeals from an order that granted the motion of the County for leave to reargue its prior motion for summary judgment dismissing the complaint against it and, upon reargument, granted the prior motion. We affirm in each appeal.
The Board contends in appeal No. 1 that Supreme Court erred in denying its motion for summary judgment inasmuch as it established as a matter of law that it did not owe decedent a duty of care. We reject that contention.
It is well established that, "[b]ecause a finding of negligence must be based on the breach [*2]of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party" (Espinal v Melville Snow Contrs., 98 NY2d 136, 138 [2002]). "Liability for a dangerous condition on property is generally predicated upon ownership, occupancy, control, or special use of the property . . . Liability can also be imposed upon a party that creates a dangerous condition on the property" (McManamon v Rockland County Ancient Order of Hibernians, 166 AD3d 955, 957 [2d Dept 2018]; see Rubin v Port Auth. of N.Y. & N.J., 49 AD3d 422, 422 [1st Dept 2008]; Phillips v Seril, 209 AD2d 496, 496 [2d Dept 1994]). Conversely, "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (Espinal, 98 NY2d at 138) although, as relevant here, the third exception to that rule applies where the contracting party has "entirely displaced the other party's duty to maintain the premises safely" (id. at 140).
Here, we agree with the Board at the outset that, assuming its potential liability is premised solely on its obligations under the agreement, the court erred in determining that the third exception in Espinal applies in this case. Although the agreement provides the Board with some discretion in fulfilling its operation and maintenance obligations, it requires that the Board obtain from the NRCS prior approval of "all plans, designs, and specifications for maintenance work" and "plans and specifications for any alteration or improvement to the structural measures," and further provides the NRCS with oversight powers that include the ability to inspect the project at any reasonable time, review maintenance and financial records that the Board is required to keep, and have free access to the project at any reasonable time for the purpose of carrying out the terms of the agreement (see Lingenfelter v Delevan Terrace Assoc., 149 AD3d 1522, 1524 [4th Dept 2017]). We thus conclude that "the contract between [the Board] and the [NRCS] was not so comprehensive and exclusive that it entirely displaced the [NRCS's] duty to maintain the premises safely, such that [the Board] owed a duty to [decedent]" (Eisleben v Dean, 136 AD3d 1306, 1307 [4th Dept 2016]; see Espinal, 98 NY2d at 141; Hutchings v Garrison Lifestyle Pierce Hill, LLC, 157 AD3d 1034, 1035-1036 [3d Dept 2018]).
Contrary to the Board's contention, however, it failed to eliminate triable issues of fact regarding ownership of the subject dam. While the Board established that it did not own the creek or the banks adjacent thereto (see generally Knapp v Hughes, 19 NY3d 672, 674 [2012]; Douglaston Manor v Bahrakis, 89 NY2d 472, 480-481 [1997]), its submissions are insufficient to establish as a matter of law that it did not own the subject dam, which allegedly constituted and created the dangerous condition (see Smith v City of Syracuse, 298 AD2d 842, 842 [4th Dept 2002]). The Board asserts that the deposition testimony of ECSWCD's district field manager establishes that, under the agreement, the Board was a contractor only and not an owner. That assertion lacks merit, however, because the district field manager specifically testified that he did not know who owned the dams. Moreover, the language of the agreement, which was submitted by the Board in support of its motion, indicates that ownership of the dams may have been transferred to the Board, and the Board failed to establish as a matter of law that no such transfer could or did occur. We thus conclude on that basis that the court properly denied the Board's motion for summary judgment.
The Board nonetheless further contends that the court erred in denying its motion for summary judgment dismissing the complaint against it on the ground of assumption of the risk. That contention is devoid of merit. The Court of Appeals has made clear that, "[a]s a general rule, application of assumption of the risk should be limited to cases appropriate for absolution of duty, such as personal injury claims arising from sporting events, sponsored athletic and recreative activities, or athletic and recreational pursuits that take place at designated venues" (Custodi v Town of Amherst, 20 NY3d 83, 89 [2012]). Here, decedent was not engaging in a sporting event or recreative activity that was sponsored or otherwise supported by the Board, nor was he wading and swimming at a designated venue (see id.; Sasso v WCA Hosp., 130 AD3d 1546, 1548 [4th Dept 2015]; Redmond v Redmond, 126 AD3d 1476, 1476-1477 [4th Dept 2015]). The court thus properly determined that assumption of the risk does not apply.
Plaintiff contends in appeal Nos. 2 and 3, respectively, that the court erred in granting the motions for summary judgment of ECSWCD and WCSWCD (collectively, Districts). Plaintiff reasons that the Districts may be held liable for the actions of the Board because the Board has no separate existence and cannot act independently of the Districts. We reject that contention.
The Board was created by an act of the New York State Legislature (L 1949, ch 374) [*3]from the directors of the Districts to serve as the local sponsor for the project in the Buffalo Creek watershed funded under the federal 1944 Flood Control Act. The legislative history establishes that the United States Department of Agriculture, which was cooperating with the conservation districts in the flood control project, had authorized an expenditure of nearly $2 million for stream bank erosion control, contingent on the State or local government assuming annual maintenance costs after the control measures were installed (see Letter from St Conservation Dept, February 24, 1949, Bill Jacket, L 1949, ch 374 at 13; Mem of Div of Budget, Bill Jacket, L 1949, ch 374 at 19; see also Board of Supervisors' Res in Support, Bill Jacket, L 1949, ch 374 at 8-9). To fulfill that purpose, the legislature empowered the Board to engage in stream bank maintenance work within the Buffalo Creek watershed and to receive monies available from the federal or state government or any other source and expend such monies in its discretion on any portion of the watershed (L 1949, ch 374, § 1). In addition, the record establishes, and plaintiff does not dispute, that the Board is capable of entering into contracts and being sued. We thus conclude that, although there is necessarily some degree of relationship between the Board and the Districts, the legislation creating the Board and the abovementioned powers and capabilities of the Board establish that it exists as an entity that is separate and distinct from the Districts (see generally John Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84, 88 [1978]; Facilities Dev. Corp. v Miletta, 246 AD2d 869, 870 [3d Dept 1998], lv dismissed 92 NY2d 843 [1998], rearg denied 92 NY2d 921 [1998]). To the extent that plaintiff further contends that ECSWCD may otherwise be liable, we conclude that her contention lacks merit.
Contrary to plaintiff's contention in appeal No. 4, we conclude that the court properly granted the Town's motion for summary judgment. The Town established that it did not own, occupy, control, or make special use of the creek or the dam and that it did not create the allegedly dangerous condition, and plaintiff failed to raise an issue of fact in opposition (see McManamon, 166 AD3d at 957).
Finally, contrary to plaintiff's contentions in appeal No. 5, we conclude that the court, upon reargument, properly granted the prior motion of the County for summary judgment.
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court